UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NASEER BAHADURI,

    Plaintiff,

                                            Case No. 1:25-cv-1297

v.

                                            Hon. Hala Y. Jarbou

KRISTI NOEM, et al.,

    Defendants.

_____/

## **OPINION**

Plaintiff Naseer Bahaduri brings this lawsuit under the Administrative Procedure Act (APA) against the United States Secretary of Homeland Security, the director of US Citizenship and Immigration Services (USCIS), and the director of USCIS's Chicago Asylum Office. Plaintiff, an Afghan national who served in the US-allied government of Afghanistan and fled to America during the US military withdrawal, alleges that USCIS has unreasonably delayed adjudicating his application for asylum in violation of the APA, *see* 5 U.S.C. § 706(1). He also seeks mandamus relief under 28 U.S.C. § 1361. Before the Court is Defendants' motion to dismiss for lack of jurisdiction and failure to state a claim (ECF No. 8). For the reasons explained below, the Court will grant in part and deny in part the motion to dismiss. The Court holds that it has subject matter jurisdiction over this case and that Plaintiff has plausibly alleged a violation of the APA, but that he is not entitled to mandamus relief.

### **I. BACKGROUND**

#### **A. Statutory Scheme**

Asylum claims are governed by 8 U.S.C. § 1158, a provision of the Immigration and Nationality Act (INA). Section 1158 provides that "[t]he Secretary of Homeland Security or the

Attorney General may grant asylum to an alien who has applied for asylum . . . if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of [8 U.S.C. §] 1101(a)(42)(A)." 8 U.S.C. § 1158(b)(1)(A). The INA sets out the following timing guidelines for asylum adjudications: "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed," and "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." *Id.* § 1158(d)(5)(A)(ii), (iii).

In the Afghanistan Supplemental Appropriations Act, 2022, Pub. L. No. 117-43, 135 Stat 344, 372 (codified at 8 U.S.C. § 1101 note [Benefits for Certain Citizens or Nationals of Afghanistan]), Congress specified a shorter timeline for a subset of asylum seekers from Afghanistan (including Plaintiff). The Act provides that for such applicants, "the Secretary of Homeland Security shall . . . in the absence of exceptional circumstances, issue a final administrative adjudication on the asylum application within 150 days after the date the application is filed." 8 U.S.C. § 1101 note.

### B. Policy Memorandum PM-602-0192

At the beginning of his second term, President Donald Trump issued an executive order that directed the Secretary of Homeland Security to "vet and screen to the maximum degree possible all aliens who intend to be admitted, enter, or are already inside the United States, particularly those aliens coming from regions or nations with identified security risks." Exec. Order No. 14161, 90 Fed. Reg. 8451, 8451 (Jan. 20, 2025). President Trump subsequently issued two proclamations placing restrictions on admission of the nationals of specific "[c]ountries of

[i]dentified [c]oncern." Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025); Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025).

On December 2, 2025, the Department of Homeland Security (DHS) issued Policy Memorandum PM-602-0192, entitled "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries."  PM-602-0192 (Dec. 2, 2025), https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf  [https://perma.cc/SZ3T-HU9K].    PM-602-0192 states that USCIS is immediately "[p]lac[ing] a hold on all Forms I-589 (Application for Asylum and for Withholding of Removal), regardless of the alien's country of nationality, pending a comprehensive review."  *Id.*  Furthermore, it provides that USCIS is "[p]lac[ing] a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation (PP) 10949 . . . pending a comprehensive review, regardless of entry date."  *Id.* (footnotes omitted).  The memorandum also states that "USCIS will conduct a thorough review" of asylum and benefits applications "on a case-by-case basis to assess benefit eligibility," and "[w]ithin 90 days of issuance of this memorandum, USCIS will prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and . . . issue operational guidance."  *Id.*  DHS subsequently issued Policy Memorandum PM-602-0194, which contains updates to reflect additional "countries of concern" and clarifies the scope of the "adjudication hold."  PM-602-0194 (Jan. 1, 2026), https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0194-PendingApplicationsAdditionalHighRiskCountries-20260101.pdf [https://perma.cc/DNU2-T7CH].

### C. Plaintiff's Asylum Application

Plaintiff is a citizen of Afghanistan who "served in the U.S.-allied Afghan government and alongside American military advisors in Afghanistan during the fight against the Taliban."

3

(Compl. ¶ 1, ECF No. 1.)  He was evacuated during the US military's withdrawal from Afghanistan in August 2021, and currently resides in the US.  (*Id.* ¶¶ 1, 8.)  On January 30, 2023, Plaintiff filed an I-589 application for asylum.  (*Id.* ¶ 15.)[1]  USCIS interviewed Plaintiff as part of his asylum application on March 10, 2023.  (*Id.* ¶ 16.)  USCIS re-interviewed Plaintiff on April 11, 2024, and Plaintiff provided additional information on May 24, 2024.  (*Id.*)  USCIS has yet to adjudicate Plaintiff's application, which has now been pending for over three years.  Plaintiff has a spouse and children who remain in Afghanistan and are in danger of being targeted by the Taliban due to Plaintiff's prior association with the American-allied government.  (*Id* ¶ 2.)  Plaintiff's family cannot come to the United States unless and until he is granted asylum.  (*Id.*)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties," "facial" and "factual."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Here, Defendants bring a "facial attack" on subject matter jurisdiction, which "merely questions the sufficiency of the pleading."  *Id.*  In reviewing a facial attack, the Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint.  *See id.*  "[T]he plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021).  "The court must 'consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction.'"  *Id.*

---

[1] The complaint lists the date of application as "January 30, 2003" (Compl. ¶ 15), but the Court assumes 2023 is the proper year.

**B. Rule 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

### III. ANALYSIS

Defendants argue that Plaintiff's claim should be dismissed because (1) subject matter jurisdiction is barred by 8 U.S.C. §§ 1252(a)(2)(B)(ii) and 1158(d)(7), and (2) Plaintiff fails to state a claim under the APA or the Mandamus Act.  As discussed below, the Court finds that it has subject matter jurisdiction and that Plaintiff states a claim under the APA, though he is not entitled to mandamus relief.

5

### A. Subject Matter Jurisdiction

#### 1. Section 1252(a)(2)(B)(ii)

Defendants first argue that a provision of the INA, 8 U.S.C. § 1252(a)(2)(B)(ii), precludes subject matter jurisdiction over Plaintiff's claim.  That provision provides:

> Notwithstanding any other provision of law. . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter *to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  Defendants argue that the provisions of the INA governing asylum procedures provide discretion to USCIS regarding the timing of adjudications. That provision states that "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed."  *Id.* § 1158(d)(5)(A)(iii).  Similarly, the Afghanistan Supplemental Appropriations Act—which governs Plaintiff's asylum claim— provides that "the Secretary of Homeland Security shall . . . in the absence of exceptional circumstances, issue a final administrative adjudication on the asylum application within 150 days after the date the application is filed."  *Id.* § 1101 note.  Defendants contend that the "exceptional circumstances" language makes the timing of adjudications a discretionary decision that the Court lacks jurisdiction to review.

There is little precedent directly concerning the application of § 1252(a)(2)(B)(ii)'s jurisdictional bar to the timing of asylum adjudications, although the case law does provide some guidance.  It appears that the few courts to explicitly address the question have held that § 1252(a)(2)(B)(ii) bars jurisdiction for claims asserting unreasonable delays in asylum adjudications.  *See, e.g.*, *Daniel v. Mayorkas*, No. 1:20-cv-01099, 2021 WL 4355355, at *3 (E.D.

Va. Sept. 23, 2021); *Tangmoh v. Majorkas*, No. 1:21-cv-02792, 2022 WL 1538627, at *4 (D. Md. May 16, 2022); *Ngwi v. Noem*, No. TJS-25-1007, 2026 WL 456573, at *3 (D. Md. Feb. 18, 2026); *Yahya v. Barr*, No. 1:20-cv-01150, 2021 WL 798873, at *2 (E.D. Va. Jan. 19, 2021).  For example, in *Daniel*, the court reasoned that "[e]ven if the asylum application's statutory regime does not expressly dictate that the pace of adjudications is 'discretionary,' it is apparent that USCIS enjoys broad discretion regarding how swiftly such decisions are made."  2021 WL 4355355, at *3 (citation omitted).  Furthermore, "it is well established that agencies enjoy broad discretion over the deployment of their own resources, particularly with regard to processing asylum applications."  *Id.*  The court concluded that because the timing of adjudications is specified to be in USCIS's discretion, federal courts lack jurisdiction to hear claims regarding delays.  *Daniel*, 2021 WL 4355355, at *3.

As noted, however, the case law on this issue is limited—in part because many courts have addressed the merits of unreasonable delay claims without considering whether § 1252(a)(2)(B)(ii) poses a jurisdictional bar.  *See, e.g.*, *Ou v. Johnson*, No. 15-cv-03936, 2016 WL 7238850, at *3 (N.D. Cal. Feb. 16, 2016); *Hasnat v. Rubio*, No. CV SAG-24-02175, 2025 WL 675221, at *3 (D. Md. Mar. 3, 2025); *Yovo v. USCIS*, No. 2:23-cv-02329, 2023 WL 8654438, at *8 (W.D. Tenn. Dec. 14, 2023).  Although this case law weighs against the conclusion that § 1252(a)(2)(B)(ii) bars jurisdiction, it is difficult to extrapolate much from the silence of these courts.

More extensive case law exists on a closely related issue: whether a plaintiff whose asylum application is not timely adjudicated may state a claim under the APA for unreasonable delay of agency action, *see* 5 U.S.C. § 706(1).  "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Thus, to determine whether a plaintiff may bring

7

a § 706(1) claim, the court must determine whether the agency action at issue is discretionary or mandatory. *See, e.g.*, *Arabzada v. Donis*, 725 F. Supp. 3d 1, 12 (D.D.C. 2024). Because this is the same inquiry required by § 1252(a)(2)(B)(ii), case law applying § 706(1) provides some insight into the application of § 1252(a)(2)(B)(ii).

Turning to that case law, one finds a significant split on the issue of whether the INA creates a non-discretionary duty to adjudicate asylum claims. Some courts have held that the word "shall" in 8 U.S.C. § 1158(d)(5)(A)(iii) creates such a duty. For example, in *Arabzada*, the court explained that "[a]lthough the ultimate decision whether to grant asylum relief is discretionary, the INA mandates that 'in the absence of exceptional circumstances, the initial interview or hearing on the asylum application *shall* commence not later than 45 days after the date an application is filed' and 'final administrative adjudication of the asylum application . . . *shall* be completed within 180 days.'" 725 F. Supp. 3d at 11–12 (cleaned up) (quoting 8 U.S.C. § 1158(d)(5)(A)(iii)). The court reasoned that "the term shall is mandatory," observing that the section of the INA concerning asylum "uses the term 'may' for some provisions but uses the word 'shall' for the specific [180-day adjudication] requirement." *Id.* at 12. The court "therefore infer[red] that the word 'shall' in this provision of the INA creates a mandatory and non-discretionary duty." *Id.*

Other courts have agreed with this line of reasoning. *See Hui Dong v. Cuccinelli*, No. CV 20-10030, 2021 WL 1214512, at *2 (C.D. Cal. Mar. 2, 2021) ("The use of the word 'shall' with respect to adjudication of an asylum application and the time frame for conducting an interview for an asylum application in the statute . . . demonstrates that the adjudication of asylum applications is not a discretionary act."); *Ou*, 2016 WL 7238850, at *3; *Hasnat*, 2025 WL 675221, at *3; *Yovo*, No. CV 20-10030, 2023 WL 8654438, at *8; *Ahmadi v. Alfonso-Royals*, No. CV-25-02211, 2025 WL 1785253, at *3 (D. Ariz. June 27, 2025); *Kullab v. DHS*, No. 24-cv-04140, 2025

WL 901943, at *4 (N.D. Cal. Mar. 25, 2025); *Niyomwungere v. Mayorkas*, No. CV-24-02809, 2025 WL 1865810, at *3 (D. Ariz. July 7, 2025); *Fang Yan v. Dir. of L.A. Asylum Off. for the USCIS*, No. 2:22-cv-05846, 2023 WL 4053410, at *3 (C.D. Cal. June 16, 2023).

On the other hand, some courts have held that the carveout for "exceptional circumstances" renders USCIS's adjudication of asylum applications a discretionary matter.  For instance, in *Ma v. Jaddou*, the court reasoned that the option to delay adjudication in exceptional circumstances "vests at least some degree of discretion to USCIS not to adjudicate an asylum application within 180 days," so § 1158(d)(5)(A)(iii) does not contain "the type of ministerial command that gives rise to a claim under the APA."  No. 2:22-cv-04210, 2022 WL 17254783, at *3 (C.D. Cal. Sept. 26, 2022); *see also Gah v. DHS*, No. 1:25-cv-00898, 2026 WL 757299, at *5–6 (D. Md. Mar. 18, 2026) ("While Congress has set forth a timeframe for adjudication of asylum applications, for the reasons set forth above, the court finds, as have others, that this timeframe does not create a clear, non-discretionary duty to act as Plaintiff demands.") (collecting cases); *De Campos v. USCIS*, No. 23-cv-03434, 2024 WL 671622, at *3 (N.D. Cal. Jan. 18, 2024) (INA's asylum-related "timing provisions . . . contain discretion-enhancing carve outs for exceptional circumstances rather than mandating an action USCIS is required to take" (cleaned up)); *Siwen Zhang v. Cissna*, No. CV 18-9696, 2019 WL 3241187, at *4 (C.D. Cal. Apr. 25, 2019); *Chen v. Radel*, No. SACV 16-1480, 2016 WL 11002594, at *3 (C.D. Cal. Nov. 21, 2016); *Alaei v. Holder*, No. 2:15-cv-08906, 2016 WL 3024103, at *3 (C.D. Cal. May 26, 2016).

After studying the above case law, the Court concludes that USCIS's duty to adjudicate asylum applications is non-discretionary.  Insofar as courts have found otherwise, they have been looking for discretion in the wrong place.  Importantly, Defendants do not appear to deny that the INA requires USCIS to adjudicate every asylum application at some point; rather, their position is

that the "exceptional circumstances" carveout provides USCIS discretion as to *when* to adjudicate those applications.  But the discretion that is relevant to § 1252(a)(2)(B)(ii) is not discretion regarding *when* to adjudicate; it is discretion regarding *whether* to adjudicate.  This inference arises naturally out of the manifest purpose of § 1252(a)(2)(B)(ii), which is to prevent courts from reviewing decisions that are meant to be solely for the agency to make.  If Congress dictated that USCIS must adjudicate asylum applications—and thus made the *fact* of adjudication non-discretionary—but provided it some leeway as to the timing of those adjudications, it would defy logic to conclude that Congress has placed the timing of adjudications within the sole, unreviewable discretion of USCIS.  That conclusion would entail that USCIS can simply delay adjudications indefinitely and never face judicial review for their failure to comply with Congress's express command.  In other words, there is no way to enforce Congress's command that USCIS adjudicate asylum applications if the timing of adjudications is entirely within USCIS's discretion.  *See Boussana v. Johnson*, No. 14 CIV. 3757, 2015 WL 3651329, at *6 (S.D.N.Y. June 11, 2015) ("The duty to decide becomes no duty at all if it is accompanied by unchecked power to decide when to decide.").

This conclusion is supported by *Barrios Garcia v. DHS*, where the Sixth Circuit held that § 1252(a)(2)(B)(ii) did not eliminate jurisdiction over a claim that DHS had unreasonably delayed making a determination as to whether the plaintiffs' work authorization applications were "bona fide."  *See* 25 F.4th 430, 443 (6th Cir. 2022).  No binding statutory timeline governed the bona fide determination; the only statutory guidance was the vague statement that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application."  8 U.S.C. § 1571(b).  Thus, USCIS presumably had some discretion over the timing of its determinations.  Nevertheless, because the

agency was required to make the bona fide determination *at some point*, § 1252(a)(2)(B)(ii) did not preclude jurisdiction. *See Barrios Garcia*, 25 F.4th at 445, 450.  In other words, the application of § 1252(a)(2)(B)(ii) hinges on whether the INA requires the agency to *make a decision*; it is irrelevant whether the INA requires the agency to make that decision within a particular timeline.

Moreover, even if it were relevant whether § 1158(d)(5)(A)(iii) provides USCIS with discretion regarding the timing of adjudications, the Court would not find that § 1158(d)(5)(A)(iii) contains the sort of explicit grant of discretion that § 1252(a)(2)(B)(ii) requires.  Section 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision only applies when an action is "*specified . . . to be in the discretion of the*" agency.  8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  The Sixth Circuit has thus held that § 1252(a)(2)(B)(ii) only applies when a provision is "wholly discretionary" and "unambiguously" grants discretion; by contrast, where a provision of the INA "supplies only *partly* discretionary power to DHS, the statute is ambiguous enough to" allow for judicial review.  *Barrios Garcia*, 25 F.4th at 445 (emphasis added).  Congress obviously knew what language to use when it intended for an INA provision to grant unambiguous discretion.  *See, e.g.*, 8 U.S.C. § 1158(b)(2)(A)(v) ("[U]nless . . . the Attorney General determines, *in the Attorney General's discretion . . . .*" (emphasis added)); *id.* § 1159(b) ("The Secretary of Homeland Security or the Attorney General, *in the Secretary's or the Attorney General's discretion . . . .*" (emphasis added)); *id.* § 1184(q)(3) ("The status of an alien physically present in the United States may be adjusted by the Attorney General, *in the discretion of the Attorney General . . . .*" (emphasis added)).  Here, Congress chose the word "shall," and "[i]t is undisputed that the word 'shall' imposes a mandatory command." *Bufkin v. Collins*, 604 U.S. 369, 379 (2025).  It would contradict common sense to interpret a provision dictating that DHS *shall* act as an explicit, unambiguous grant of discretion.  Even if the DHS has slightly more wiggle room in "exceptional

11

circumstances," the timing provision is still the sort of "semi-mandatory statute that does not unambiguously specify" DHS's discretion, so § 1252(a)(2)(B)(ii) does not bar jurisdiction. *Barrios Garcia*, 25 F.4th 430 at 445 (cleaned up).

Finally, even if the decision at issue here was committed to USCIS's discretion by statute, § 1252(a)(2)(B)(ii) would still not be a bar to suit because discretionary decisions regarding asylum applications are expressly excluded from the jurisdictional bar.  Section 1252(a)(2)(B)(ii) provides that courts retain jurisdiction to review "the granting of relief under section 1158(a) of this title."  8 U.S.C. § 1252(a)(2)(B)(ii). "The exception for relief under § 1158(a) refers to administrative decisions whether to grant asylum." *Kucana v. Holder*, 558 U.S. 233, 239 n.4 (2010).[2]   Defendants argue that this exception does not apply here because the 180-day provision appears in § 1158(d), not § 1158(a); presumably Defendants would apply the same reasoning to the Act's 150-day adjudication provision, which does not appear in § 1158 at all.  But Plaintiff is not challenging a decision made pursuant to § 1158(d) or the analogous Act provision; he is challenging the failure to act on his asylum application within a reasonable time.  Other courts have recognized that although the 180-day provision appears in § 1158(d), a claim for unreasonable delay under the APA "does not concern Defendants' obligation to abide by § 1158(d)." *Yilmaz*, 697 F. Supp. 3d at 957 (quoting *Xu v. Cissna*, 434 F. Supp. 3d 43, 52 (S.D.N.Y. 2020)).[3]   Rather, an unreasonable delay claim concerns Defendants' obligation to adjudicate asylum applications.  And because § 1252(a)(2)(B)(ii)'s exception allows judicial

---

[2] The Ninth Circuit has described § 1252(a)(2)(B)(ii)'s reference to § 1158(a) as a drafting error, noting that § 1158(b)—which provides that the Attorney General "may grant asylum"—is the more logical referent. *Ruiz v. Bondi*, 163 F.4th 586, 596 (9th Cir. 2025); 8 U.S.C. § 1158(b)(1)(A).  The explanation for the mistake is that Congress was referring to subsection (a) in a prior version of § 1158, where (a) provided that a non-citizen "may be granted asylum in the discretion of the Attorney General."  8 U.S.C. § 1158 (1994).  Here, the Court's analysis is the same regardless of whether Congress intended to refer to § 1158(a) or (b).

[3] Indeed, Plaintiff could bring an unreasonable delay claim even if § 1158(d) and the Act did not exist at all. *See Barrios Garcia*, 25 F.4th at 454 ("The violation of a statutory deadline is not required to succeed on a § 706(1) claim.").

review for adjudications of asylum applications, Plaintiff's claim fits squarely within the exception.  Otherwise—that is, if § 1252(a)(2)(B)(ii)'s exception did not allow judicial review of a failure to timely adjudicate an asylum application—USCIS could simply avoid judicial review of asylum denials by never ruling on applications at all.  This result is unacceptable as a matter of statutory interpretation because it would render § 1252(a)(2)(B)(ii)'s asylum exception meaningless and negate Congress's plain intent to make decisions on asylum applications reviewable.  After all, "[t]he duty to decide becomes no duty at all if it is accompanied by unchecked power to decide when to decide."  *Boussana*, 2015 WL 3651329, at \*6.

In sum, § 1252(a)(2)(B)(ii) does not preclude jurisdiction over Plaintiff's claim.

### (a) Section 1158(d)(7)

Defendants also argue that Plaintiff's claim is barred by 8 U.S.C. § 1158(d)(7), which provides that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  *Id.*  The "subsection" to which § 1158(d)(7) refers concerns the procedures for adjudications of asylum applications and contains the 180-day timeline.  *See id.* § 1158(d).  But Plaintiff's claim is governed by the Act's 150-day provision, not the 180-day provision in § 1158, and the Act does not contain any analogous disclaimer of rights. *See generally* 8 U.S.C. § 1101 note.  Thus, no similar limit on enforcement applies.  *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (cleaned up)).  It is therefore unnecessary to determine whether § 1158(d)(7) would otherwise bar a claim based on § 1158(d)(5)(A)(iii)'s 180-day provision.

In sum, Defendants' motion to dismiss under Rule 12(b)(1) fails because the Court has jurisdiction to hear Plaintiff's APA claim.

## B. Failure to State a Claim

### 1. Administrative Procedure Act

Defendants argue that Plaintiff fails to state a claim under the APA because (1) adjudicating asylum applications is not a specific act USCIS is required to take and thus falls outside the scope of 5 U.S.C. § 706, and (2) the delay in adjudicating Plaintiff's asylum application is not unreasonable.  As explained below, the Court finds neither argument availing.

### (a) Scope of Section 706(1)

The APA provides that a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see also* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it.").  "A 'claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take.'"  *Barrios Garcia*, 25 F.4th at 450 (quoting *Norton*, 542 U.S. at 64).  As explained above (*see supra* Section III.A), this analysis overlaps significantly with the analysis of reviewability under § 1252(a)(2)(B)(ii) because both turn on the agency's discretion (or lack thereof).  Although there is significant disagreement in the case law, numerous courts have held that § 1158 creates a non-discretionary duty to adjudicate asylum applications.  *See Arabzada*, 725 F. Supp. at 1; *Ou*, 2016 WL 7238850, at *3; *Hasnat*, 2025 WL 675221, at *3; *Yovo*, 2023 WL 8654438, at *8; *Hui Dong*, 2021 WL 1214512, at *2; *Ahmadi*, 2025 WL 1785253, at *3; *Kullab*, 2025 WL 901943, at *4; *Niyomwungere*, 2025 WL 1865810, at *3; *Fang Yan*, 2023 WL 4053410, at *3.

The Court agrees for largely the same reasons that were relevant in the § 1252(a)(2)(B)(ii) analysis.  Just as with § 1252(a)(2)(B)(ii), the relevant question under § 706(1) is not whether the

agency is required to act within a certain time, but whether it is required to act at all.  Thus, if a statute requires an agency to take an action but sets no timeline for doing so, a plaintiff may still bring a § 706(1) claim for unreasonable delay.  *See Barrios Garcia*, 25 F.4th at 454 ("The violation of a statutory deadline is not required to succeed on a § 706(1) claim.").[4]  As noted above, Defendants do not contend that in exceptional circumstances, USCIS may entirely fail to adjudicate an application; indeed, DHS regulations explicitly provide that USCIS "*shall* adjudicate the claim of each asylum applicant whose application is complete within the meaning of [8 C.F.R.] § 208.3(c)(3) and is within the jurisdiction of" USCIS.  8 C.F.R. § 208.9 (emphasis added).[5] Accordingly, any discretion USCIS has over the timing of adjudications has no bearing on whether adjudications are "discrete agency action[s] that [USCIS] is required to take."  *Barrios Garcia*, 25 F.4th at 450.  And because USCIS is required to adjudicate asylum applications, Plaintiff may bring a § 706(1) claim for unreasonable delay of such adjudications.  The merits of that claim are discussed below.

### (b) Unreasonable Delay

In evaluating an unreasonable delay claim under § 706(1), the Court must "consider six factors from *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)." *Barrios Garcia*, 25 F.4th at 451.  *TRAC* directs courts to address the following considerations:

(1) the time agencies take to make decisions must be governed by a rule of reason;

---

[4] Indeed, an unreasonable delay claim specifically covers situations where there is no explicit deadline; in the case of an explicit deadline, the proper claim would instead be for "agency action unlawfully withheld" (also under § 706(1)). *See Barrios Garcia*, 25 F.4th at 453.

[5] Regulations cannot be a source of a non-discretionary duty for the purposes of § 1252(a)(2)(B)(ii) because that provision explicitly refers to discretion conferred by statute. *See Flores v. Garland*, 72 F.4th 85, 93 (5th Cir. 2023) ("[A]gency regulations cannot abdicate discretion authorized by statute, at least where § 1252(a)(2)(B)(ii) is concerned.").  On the other hand, regulations *can* be the source of a non-discretionary duty for the purposes of a § 706(1) claim.  *Barrios Garcia*, 25 F.4th 430 ("[A]n agency can create a non-discretionary duty by binding itself through a regulation carrying the force of law.").

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up).  "A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage."  *Barrios Garcia*, 25 F.4th at 451.  "[I]n undertaking this analysis at the motion to dismiss stage, the court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay."  *Ahmed v. Blinken*, No. 23-11860, 2024 WL 4172525, at *3 (E.D. Mich. Sept. 12, 2024).

The Court finds that, at this early stage, Plaintiff has stated a plausible claim for unreasonable delay.  As to the first factor, while courts have found USCIS's general policy governing the order in which it addresses asylum applications to be reasonable, *see Yovo*, 2023 WL 8654438, at *5, USCIS has stopped adjudicating all asylum applications, and there is insufficient briefing and evidence at this stage to determine whether this no-adjudication policy is a rule of reason.  Thus, this factor is at best neutral.  The second factor weighs in Plaintiff's favor because Congress has indicated that asylum applications like his should be processed within 150 days; instead, Plaintiff has been waiting over three years.  The 150-day timeline is not strictly binding, given the carveout for exceptional circumstances, but it is certainly evidence of what

16

Congress thought a reasonable timeline was.  *See Barrios Garcia*, 25 F.4th at 454 (non-binding deadline can still indicate Congress's intent).[6]  And if waiting at most 150 days is reasonable, then waiting seven times that amount is likely unreasonable.[7]

The third and fifth factors also weigh in Plaintiff's favor because he alleges that his family is in imminent danger due to Plaintiff's past work with the American government, and that he cannot bring them to this country unless he first receives asylum.  As to the fourth factor, courts have often reasoned that ordering faster adjudication of individual asylum applications is unjustified because "a judicial order putting an individual at the head of the queue would simply move all others back one space and produce no net gain."  *Yakhontova v. Barr*, No. CV19-4290, 2020 WL 4355299, at *4 (C.D. Cal. Apr. 14, 2020).  But that logic is inapplicable here because the Act explicitly instructs USCIS to prioritize asylum seekers from Afghanistan; in other words, allowing Plaintiff to move up the line accords with congressional intent.  Indeed, Plaintiff notes that "[a]s of November 26, 2025, the Defendants had received 22,305 asylum applications [under the Act]; adjudicated 21,370 of those applications; and granted 20,462 of them."  (Pl.'s Resp. 2, ECF No. 11 (citing *Ahmed v. DHS*, No. 4:23-cv-01892, ECF No. 147-1 (N.D. Cal. Nov. 26, 2025)).)  Furthermore, because USCIS is not adjudicating *any* asylum applications, requiring it to adjudicate Plaintiff's application would not necessarily delay anyone else's adjudication.

---

[6] The fact that Plaintiff may use the statutory deadline to determine what makes a delay unreasonable does not conflict with the Court's observation above (*see* supra, III.A.1) that Plaintiff's claim is grounded in the duty to adjudicate and the APA, rather than in the statutory deadline itself.

[7] Defendants argue that "courts look to the last government action to assess the length of any alleged delay" (Mot. to Dismiss 12, ECF No. 8), and they contend that the delay here only began in April 2024, after USCIS re-interviewed Plaintiff.  This would be a delay of about two years instead of three.  *See Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1255 (S.D. Cal. 2024) ("[C]ourts generally measure delay from the last government action to the issuance of the court's opinion . . . .").  However, the Court finds this argument unpersuasive.  The Act's 150-day timeline runs from "the date the application is filed."  8 U.S.C. § 1101 note.  Thus, insofar as the 150-day timeline is understood as a congressionally created benchmark, the relevant span of time here is three years.  Moreover, under Defendants' view, USCIS could insulate itself against all unreasonable delay claims by simply re-interviewing each asylum seeker periodically without ever adjudicating their applications.  In the absence of evidence regarding the purpose of or need for the re-interview, the Court will use the date of application to measure the delay.

Finally, as to the sixth factor, Plaintiff argues that USCIS's decision to cease all asylum adjudications—as well as to stop granting benefits to immigrants from particular countries—is motivated by nationality discrimination and is thus improper.  However, the present record is insufficient to establish the motivation for USCIS's decision.  And although the broader bar on immigration benefits applies only to nationals of specific countries, the asylum adjudication hold applies to all applicants, so it is unclear how nationality discrimination could explain such a universal bar.  The sixth factor is therefore neutral.

Putting the *TRAC* factors together, the Court concludes that Plaintiff has stated a claim for unreasonable delay.  This Court is aware that other courts have denied relief despite similar or longer delays in adjudications of asylum applications.  *See, e.g.*, *Yakhontova*, 2020 WL 4355299, at *3 (four-and-a-half-year delay); *Siwen Zhang*, 2019 WL 3241187, at *5 (four-year delay); *L.M. v. Johnson*, 150 F. Supp. 3d 202, 214 (E.D.N.Y. 2015) (two-year delay).  But those cases are factually distinguishable for the reasons expressed above: Plaintiff is in a group of asylum seekers specifically prioritized by Congress, USCIS has decided not to adjudicate any asylum applications, and the delay in this case has a clear impact on human welfare.  *Cf. Yakhontova*, 2020 WL 4355299, at *3 ("The [complaint] does not make any clear allegations of risk to the health and welfare of or prejudice to plaintiffs resulting from the delay in adjudicating their asylum applications.").

In sum, Plaintiff has stated a claim for unreasonable delay of agency action under the APA.

### 2. Mandamus

Plaintiff also seeks a writ of mandamus under 28 U.S.C. § 1361 compelling Defendants to adjudicate his asylum claim.  However, a plaintiff may only obtain mandamus relief if "there is no other adequate remedy available."  *Gratton v. Wildasin*, No. 21-5824, 2022 WL 3969833, at *2 (6th Cir. June 22, 2022) (quoting *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th

18

Cir. 2011)); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief . . . ."). Here, because relief is available under the APA, mandamus relief is unavailable.

## IV. CONCLUSION

The Court has jurisdiction to hear Plaintiff's claim, and Plaintiff has plausibly alleged a claim under the APA for unreasonable delay. Because APA relief is available, mandamus relief is in turn foreclosed. Thus, the Court will grant Defendants' motion to dismiss with regard to Plaintiff's request for mandamus relief, and otherwise deny it.

An order will enter in accordance with this Opinion.

Dated: March 31, 2026                              /s/ Hala Y. Jarbou
                                                   HALA Y. JARBOU
                                                   CHIEF UNITED STATES DISTRICT JUDGE